## IN RE JOSÉ RIVERA RIVERA, Respondent.

No. 104.   Decided September 28, 1962.

*Federico Ramírez Ross, Angel Viera Martínez,* and *Víctor Gutiérrez Franqui* for respondent.   *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

PER CURIAM.

On November 7, 1960, the Solicitor General of Puerto Rico, in compliance with our decision of the previous September 16, filed a disbarment proceeding against José Rivera Rivera, attorney-at-law, charging him with improper and highly censurable conduct, consisting in the following charges, all arising from certain claims made by the afore-mentioned attorney in relation with an automobile accident.

### "FIRST CHARGE

"About the months of April and May 1959 respondent, in the practice of his office of attorney, compromised with the

insurance company U. S. Casualty Company, through its representatives in Puerto Rico, Lippit y Simonpietri, Inc., the right of action of the minors Confesor Báez Rivera, Teresita Medina Ortiz, and Carmín Pérez, for damages suffered by these minors as a result of an automobile accident occurred on April 18, 1959; he received the proceeds of the respective transactions and retained for himself part thereof by way of attorney's fees; all the foregoing was done without the knowledge of the prejudiced parties and without the knowledge, authorization or consent of the parents of the injured parties and without the corresponding judicial authorization.

### "Second Charge

"About the months of April and May 1959 respondent, in the practice of his office of attorney, compromised with the insurance company U. S. Casualty Co., through its representatives in Puerto Rico, Lippit y Simonpietri, Inc., without the authorization, consent, or knowledge of the injured parties Venancio Pérez Mercado,[1] Antonia Burgos, Inocencio Mercado Fuentes, Norberto Quianes Rivera, Antonia Rivera, Asunción Ortiz, and Petra Villalongo, the right of action for damages suffered by the above-mentioned persons as a result of an automobile accident occurred on April 18, 1959; he received the proceeds of the respective transactions and retained for himself part thereof by way of attorney's fees.

### "Third Charge

"About the months of April and May 1959 respondent, without the authorization, consent, or knowledge of José Márquez, undertook to represent him, and acting in such capacity, in spite of the fact that in the automobile accident occurred on April 18, 1959 the above-mentioned José Márquez did not suffer recoverable damages, compromised with the insurance company U. S. Casualty Co., through its representatives in Puerto Rico, Lippit y Simonpietri, Inc., the alleged right of action for dam-

---

[1] All the steps taken in the course of the afore-mentioned transactions related with Venancio Pérez Mercado were taken in the name of Bienvenido Pérez.

ages, receiving the product of said transaction and retaining for himself part thereof as attorney's fees.

## "FOURTH CHARGE

"About the months of April and May 1959 respondent cashed the aforesaid checks issued by the insurance company jointly payable to him and to the injured parties in the above-mentioned transactions, and personally or in conspiracy with third persons permitted the forged endorsement of said checks; retained for himself part of the money product of those checks and did not make sure whether the injured parties actually receive the sums which corresponded to them.

## "FIFTH CHARGE

"About the months of April and May 1959 respondent, upon compromising with the insurance company the respective rights of action to which we have referred in the previous charges, signed as witness of the claimants' signatures in each one of the eleven (11) releases, stating it to be so in spite of the fact that said claimants never signed those documents nor authorized any other person to sign them.

## "SIXTH CHARGE

"About the months of April and May 1959 respondent presented to the insurance company mentioned in the previous charges, a false claim for the payment of damages allegedly suffered by José Márquez, and presented documents to said company in support of such claim, all this in violation of § 479 of the Penal Code of Puerto Rico, 33 L.P.R.A. § 1902."

Respondent answered the complaint alleging the following:

## "FIRST CHARGE

"Respondent denies that the compromise in question was made without the consent of the injured parties and/or without the knowledge, authorization and/or consent of the parents of the injured parties, and alleges to the contrary that according to his best information and belief said compromise was made

with the consent, authorization, and approval of the parents of the minors concerned. He admits the other facts alleged in the first count, affirmatively alleging in relation therewith that the compromise to which that count refers was made for the sum of $90 in each case, and the respondent did not procure judicial authorization in relation therewith, because he understood that said authorization was not necessary pursuant to the law; that the sum kept by him from the amount of the compromise by way of attorney's fees was the just compensation agreed upon for his services.

### "SECOND CHARGE

"In connection with the second charge respondent denies that the compromise in question was made without the authorization and consent of the above-mentioned injured parties and he alleges, on the contrary, that according to his best information and belief the aforesaid injured parties consented to the compromise. He admits the other facts alleged in the second count. He affirmatively alleges that the part of the product of the compromises kept by him as attorney's fees represents the just compensation agreed upon for his services.

### "THIRD CHARGE

"Answering the third count respondent denies that he undertook the representation of José Márquez without his authorization, consent, or knowledge and he likewise denies the allegation in the above-mentioned count to the effect that José Márquez did not suffer recoverable damages, and that respondent, without the authorization, consent, or knowledge of José Márquez, compromised the claim in the latter's name. He alleges, on the contrary, according to his best information and belief: that José Márquez did suffer recoverable damages as a consequence of the accident in question; that he undertook the representation of José Márquez with the authorization, consent and knowledge of the latter; and that the aforesaid José Márquez accepted and agreed to the compromise referred to in the third count. He admits the other facts alleged in the third count, affirmatively alleging that the amount retained by him from the product of the compromise represents the just compensation agreed upon for his services.

"Fourth Charge

"As to the fourth count respondent denies that he personally or in conspiracy with third persons permitted forgery in the endorsements of the checks and alleges that he took the steps that in good faith were within his reach so that the claimants would receive the sums which corresponded them. He affirmatively alleges that he accepted part of the amount of the checks referred to in the count as payment for his professional services and in agreement with the contract by virtue of which he rendered said services, and he alleges besides, a total lack of knowledge as to the alleged forgery of the checks.

"Fifth Charge

"Answering the fifth charge respondent admits having signed the releases but denies that he did it as witness of the claimants' signatures. In connection with this fifth charge respondent, through lack of information, denies the allegation that the claimants never signed the releases nor authorized any person to sign them.

"Sixth Charge

"Of the sixth charge respondent denies having made any false claim and therefore, denies having presented documents to the insurance company in support of such false claim."

Augusto Palmer, Judge of the Superior Court of Puerto Rico, was appointed to receive the evidence and after same was received, he made the following findings of fact:

"I. In the afternoon of April 18, 1959, in a public road within the municipality of Río Grande, Puerto Rico, an automobile accident occurred consisting of a collision between two public automobiles engaged in the transportation of passengers for pay.

"II. In the aforesaid accident eleven passengers were injured. The injuries were not serious; they only consisted in slight bruises and superficial lacerations. Antonia Burgos, a passenger, was unconscious for some time, but it seems possible that this was due to her old age and to the shock suffered.

"III. The aforesaid passengers were taken to the Public Health Unit of Río Grande, where they were examined and

attended by a physician in the regular employ of said unit, named Dr. Américo Deñó.

"IV. For approximately six or eight months prior to this date, this physician had been acting in common agreement with two individuals of that locality, in order to negotiate claims of persons involved in automobile accidents like the above-mentioned one. He prepared medical certificates, and then in Río Piedras, those individuals made arrangements for the services of an attorney who, using such certificates, then made the corresponding claims to the insurance companies which had issued policies covering the pertinent risks. One of these individuals was nicknamed Blackie, and the other one Félix Ruiz Ceballos, who was better known by the nicknames Curro and Currito. When the claims were successful, the doctor received ten dollars for every certificate issued and the middle man employed, Blackie or Currito, received an undetermined sum. (Tr. Ev. 135-150.)

"V. On this occasion Dr. Deñó, in a casual way, without any explanation and addressing the group of passengers in general, told them that he would take care of their claims. None of the persons showed any reaction to this spontaneous statement by the doctor; some did not even hear him. (Tr. Ev. 175-176.)

"VI. The passengers involved in the above-mentioned accident and connected with the present complaint were the following:

1. Antonia Burgos
2. Antonia Rivera
3. Petra Villalongo
4. Asunción Ortiz
5. Teresita Medina
6. Carmín Pérez
7. Norberto Quianes
8. Inocencio Fuentes
9. Venancio Pérez, who appears as Bienvenido Pérez
10. Confesor Báez
11. José Márquez

"VII. The above-mentioned persons were all from the rural zone of Río Grande, of humble social condition, of poor educa-

tional background in general; three of the adults involved could hardly write their names. Antonia Burgos was and is illiterate to the degree that she does not even know how to write her name.

"VIII. Three of these persons, on the date of the accident and during the negotiations of the claims later made in their names, were very young children, namely: (1) Confesor Báez, five years old; (2) Teresita Medina, six years old, and (3) Carmín Pérez, three months old.

"IX. a. The passenger José Márquez, mentioned under No. 11 in Conclusion No. VI, only suffered a slight bruise in the shin bone, he did not submit to any examination by the aforesaid doctor, although he went to the Public Health Unit. Nevertheless, the doctor issued a certificate recording therein that this passenger had suffered the following injuries:

1. Contusion on both arms
2. Contusion in the left side
3. Contusion in the right knee
4. Contusion in the lumbar region

"b. There are other passengers who denied having suffered all the injuries mentioned in the certificate issued by the aforesaid doctor on this occasion.

"X. This time, following the practice adopted in previous similar cases and pointed out in the previous Conclusion No. IV, Dr. Deñó handed to Félix Ruiz Ceballos, alias Currito, the certificates prepared by him, respecting the eleven afore-mentioned passengers. (Tr. Ev. 142–144.) Currito went with the papers to Río Piedras, to see Mr. Cayetano Coll Pujols, attorney-at-law, whom he interviewed in a commercial establishment located in the first floor of the building in which the Río Piedras Parts of the District Court are located.

"XI. In the interview mentioned in the previous count, respondent José Rivera Rivera was present.

"XII. In the aforesaid interview attorney Coll Pujols did not accept, for the moment, to negotiate the claims of the cases brought by Currito, alleging that on that day he would be busy at a trial in Caguas, and he suggested that respondent take care of those cases.

"XIII. Respondent José Rivera Rivera accepted; he took the certificates in question and the police report on the accident,

and later visited the insurance company Lippit & Simonpietri, in San Juan, on business to make claims in the name of the persons mentioned in the aforesaid Conclusion No. VI.

"XIV. The passengers of the public vehicle involved in the accident were protected by policy No. AFL–787901, issued by the U. S. Casualty Co., which was represented by the aforesaid insurance company. The maximum limits of compensation agreed upon in such policy were $750 per person and $2,500 per accident.[2]

"XV. The insurance company informed respondent its willingness to settle each case through the payment of the compensation of ninety dollars ($90) to each claimant. It gave respondent the 'release' document necessary to make the compromise.

"XVI. Respondent delivered those 'releases' to Currito so that he could take the signature of the claimants. He pointed out to him that his fees would be equal to a third of the compensation granted in each case.

"XVII. Then, the aforesaid Currito would gradually return to respondent those 'releases' with the alleged signature of the claimants at the end of each document.

"XVIII. (a) Every time respondent received any of those signed 'releases' he would go to the insurance company with the document, signed the same at the office, next to the alleged signature of the claimant and under the printed caption which read 'Testigos' in Spanish and 'Witnesses' in English. Under the signature of respondent his name and title were typewritten as follows: 'Attorney José Rivera Rivera'. At the beginning of such document it was recorded that the claimant appeared assisted in the compromise by his lawyer.

"(b) The Master concludes that the signature of respondent in such documents had a dual character. Said signature served to represent the appearance of the claimant's attorney in the document and his acceptance of the compromise effected, and to attest as to the additional circumstance of the claimant's signature on the document.

---

[2] It is inferred that the aforesaid policy was issued pursuant to the provisions of law which establishes an Insurance for Public Service Automobiles. (9 L.P.R.A. § 180.)

"XIX. The insurance company then issued respondent a check for ninety dollars in each case, drawn in the name of respondent and of the claimant.

"XX. Respondent would take each check, hand it to Currito, who later returned it endorsed with the alleged signature of the claimant. Respondent cashed the check by adding his signature of endorsement, and would then take thirty dollars from that cash money for himself in payment of his fees, and would deliver the remainder to Currito himself.

"XXI. (a) Later, Dr. Deñó would deliver to the persons compensated by the accident a general sum of forty dollars per person.

"(b) However, to Antonia Burgos and to Antonia Rivera, mother and daughter, respectively, he only delivered sixty five dollars ($65) as total amount covering the two cases. When Antonia Rivera, mother of the boy Confesor Báez, refused to accept it, the aforesaid doctor Deñó deposited in the Río Grande Part of the District Court the sum of sixty dollars ($60), corresponding to that boy's claim. Later that sum was delivered in court to the grandmother of the minor, Antonia Burgos, and to his mother, the aforesaid Antonia Rivera. This transaction in court lacked every formality; no judicial proceeding whatsoever was held in that respect.

"(c) The father of the afore-mentioned minor, also named Confesor Báez, did not obtain a single cent of the amount granted to his son.

"(d) To claimant José Márquez no money whatsoever was delivered him, notwithstanding the fact that the insurance company paid ninety dollars as compensation to this person.

"XXII. When respondent accepted to negotiate the afore-mentioned claims he had personally known Félix Ruiz Ceballos for only two months. Previously he had only seen him talking to lawyers, from which he inferred that he was a person who could be trusted by those lawyers. Hence, the knowledge he had of this person was very superficial, speculative, and limited. With this elements of judgment he inferred that the aforesaid Currito was a person 'of good reputation.'

"XXIII. Respondent, before or during the aforesaid professional transaction did not see, nor interviewed, nor got in touch with the persons mentioned in Conclusion No. VI, and

there was no express or implied authorization, nor sufficient and real consent of said persons to the aforesaid professional transaction made in their name and benefit, and in the exercise of the rights belonging to same. Even if any one of these persons had actually signed the 'release' document employed in the compromise of his case, or the checks issued by the insurance company, the signature does not attest to a knowledge and understanding of the scope and purpose thereof, which is capable or sufficient to warrant a genuine, effective, and real consent to respondent's compromise in itself, to the monetary obligation entailed thereby and to the compromise effected. A similar conclusion is reached respecting the act of acceptance of the sums which were actually delivered to some of the persons involved in the above-mentioned accident. These conclusions are extended to the question relating to the consent of the parents of the minors who appeared as claimants, and to the compromise made in the cases of those minors.

"XXIV. When respondent accepted to negotiate the claims in question, only several days had elapsed since his resignation as judge of the district court; he had no private office, he wanted to rest for some time and then engage in private businesses and did not wish to have any case as attorney which demanded too much work.

"Respondent has also filled the position of Justice of the Peace in Mayagüez and has privately practiced the profession of attorney. He has been active in commerce and in industry and on the day of the occurrence had a good and sound financial standing.

"XXV. Respondent did not make, demand, nor obtain verification whatsoever on the authenticity of the signatures in the 'releases' and the checks negotiated in the cases handled by him; in the above-described circumstances he depended entirely in the trust deposited in Félix Ruiz Ceballos in this respect.

"XXVI. The majority of the persons mentioned in Conclusion No. VI denied having signed the 'releases' and the checks employed in the compromise of the claims handled by respondent. It is inferred that several of these signatures are false, However, it can not be inferred that respondent knew of the falsity of the same.

"XXVII. Respondent did not ascertain the actual delivery of the money which he was sending to each claimant as part of the compensation of ninety dollars issued by the insurance company through his negotiations in each and every one of the eleven above-mentioned cases.

"XXVIII. Respondent negotiated, compromised and collected claims belonging to the three previously mentioned passengers without the proper authorization and acceptance of the parents or of the mother with patria potestas over them. Under the same circumstances he collected as attorney's fees one third of the sums granted to each minor without the consent of the father or of the mother, and did not procure any judicial authorization respecting the claims corresponding to these children. But it is concluded that the injuries received by the minors in question did not justify a compensation for a sum greater than five hundred dollars ($500).[3]

"XXIX. There are no grounds to infer that respondent, when he made the claims in the name of José Márquez and of the rest of the injured passengers to the insurance company, knew of the fact that the latter had not suffered any or several of the injuries pointed out in the medical certificates issued by Dr. Deñó. On the contrary, it appears that he had those certificates before him and the police report, which established compensable injuries as suffered by these persons in the aforesaid accident. It can not be inferred therefore that respondent knowingly made any false or fraudulent claim to that company."

■ Respondent and the Solicitor General filed objections to the Master's report. We have considered them and the ones filed by respondent lacked merit. As to the ones filed by the Solicitor General, the first one refers to the conclusion that since "the injuries received by the minors . . . do not justify a compensation for a sum greater than $500" there was no need to previously obtain a judicial authorization to make the compromise. In *Cruz* v. *Central Pasto Viejo, Inc.*, 44 P.R.R. 354 (1933) we decided that such authorization is necessary. See, also, 31 L.P.R.A. § 4822.

---

[3] See 31 L.P.R.A. §§ 616 and 4822, respecting the cases lacking judicial authorization in regard to the alienation and transaction of property and rights of minor children.

The other objections made by the Solicitor General to the effect that there should be added to Conclusion No. XXVI (". . . it is inferred that several of these signatures are false. However, it can not be inferred that respondent knew of the falsity of the same") and to Conclusion No. XXIX (". . .it can not be inferred therefore that respondent knowingly made any false or fraudulent claim to that company") that respondent was negligent in failing to comply with his duty as attorney, and that he should have investigated and taken the necessary precautions through proper and reasonable investigation in order to ascertain the truth of what he was being informed.

■■ We have carefully examined the evidence which the Master had before him and the findings of fact which were made are fully justified. They clearly show an improper and highly censurable conduct on respondent's part in the practice of the profession of attorney. It was his duty to consult the injured parties before assuming their representation. It is highly improper to make negotiations of the nature of those made by respondent without holding a previous conference with each one of the injured persons. Since the evidence showed that respondent had no knowledge of the plot behind the claims and since it appears that his actions were the result of inexcusable negligence, we believe it is sufficient warning that he should be more careful and exacting in the representation of cases and to suspend him from the practice of his profession for a term of six months.

The suspension of respondent José Rivera Rivera from the office of attorney for a period of six months will be ordered.

Mr. Chief Justice Negrón Fernández and Mr. Justice Blanco Lugo did not participate.